that existed at the time. They have the burden, this is a 12b6 motion, they're setting forth documents that while they have a right to do so, as Judge Smith indicates, they still have the burden to determine authenticity and foundation. Well, and I guess my worry about that is, as I read what they did, they gave the documents to the district court because they weren't in the complaint and the best you said was there's no evidence we ever reviewed these, no evidence that they were made available, so therefore they're not authentic. Well there's no evidence that these were the actual documents online at the time. I mean, you can change a website instantaneously every day. They have to show that somehow these... So I just need to send this back to the district court to have him decide whether these were the authentic documents. Well I think our case is more than that and I'd like to... Well I guess my worry is that I think it very much depends on that because there are things in the online credit card application and are suggestions in the additional disclosure statement brochure and are things in the cardholder agreement and disclosure statements that if your client would have been normal consumer enough to read, he would have known. Can I address that? Sure. That's what I want you to do. Good. Let's get to it. Two points, two points. First point is the additional disclosure statements, everything he got in the mail is irrelevant because at that point he had the card. The choice was over. He did not get these disclosures in advance that would have allowed him to make a determination, should I get the card or not. But didn't he go to the website? Yes. He applied online. Yes. So now I want to address that. Let's talk about that. And on the website you have the opportunity to say yes I have read and agree and it was all there if you just only scroll down? Well there was more to it than that your honor and that's what I would like to address. He not only, he first looked at the online advertisement and we referenced that as exhibit A in our excerpt. It's important that the online advertisement says apply today and it directs you to two sections of their website. It directs you to their program rules and to the frequently asked questions. So the first place he went to were the program rules and the program rules your honor is exhibit C to our excerpt at page 36 and they say, and this is very important, he looked to the totality of the circumstances and it had to credit all of our allegations as true and indulge all inferences toward us. So we first alleged at exhibit C page 36 of our excerpt and it shows four pages of online program rules. Best Buy, Reward Zone Program, MasterCard, Terms and Conditions. Terms and Conditions. And he read that. And he read all four pages of that online because that's where the online advertisement directed him to go. And there's not a single mention of an annual fee. In four pages of Terms and Conditions, not a single mention of the annual fee online. So then they say go to our FAQs, the Frequently Asked Questions. And that is exhibit D at page 41 of our excerpt. And there is not one mention of the online, of the annual fee in the Frequently Asked Questions. Now would any defendant who was not being deceptive and clever, would the defendant conceal the annual fee if it existed in a Frequently Asked Question? And wouldn't that your honor be the first question any consumer would ask? What am I paying for the product? What does this product cost? What's the cost? So therefore the disclosure statement is irrelevant? The after, yeah, I think the disclosure statement that he got in the mail is irrelevant. No, no, no, no. The disclosure statement that was on the website. You have to scroll down. I understand. So I'm going to get to that. So let's take the totality. I'm going to get to that now. I'm not, I'm not being. Well, you don't, you don't, you don't dispute that in the disclosure statement the fee is clearly identified as between that range. In the scroll box, six pages if you scroll down, when it originally says the MasterCard Privacy Policy, yes, if you scroll six pages in that one-inch box, you do get that Schumer box that says the potential for an annual fee. But my point, and what the district court should have looked at, is what would the reasonable consumer have done when he first reviewed the program rules, the terms and conditions, and read four pages with not one mention of an annual fee? And then when they direct him to look at the frequently asked questions, and we allege this in paragraphs 20, 21, and 27 of our complaint, and the district court ignored this, not one mention in the court's opinion of the program rules, Exhibit C, and not one mention of the frequently asked questions. But what I don't understand, counsel, is that he had 90 days to withdraw his application. That's a good point, Your Honor, and that's true. He did. And he could have received back his, he wouldn't have been billed for the $59. But that's alleged in our complaint, and it's well known that if you apply for credit, and you get credit, and you cancel credit, it negatively affects your credit rating. And he's very concerned about his credit rating, because he, within the last five years, emerged from bankruptcy. And so he's done everything possible to rebuild his credit rating, and it was a concern to him. And I don't believe that he should have to make that choice. He should have to say, either I get my money back and hurt my credit rating, or I keep my credit rating, but I take the chance that I've been deceived by HSBC Bank. So while Your Honor is correct that he absolutely could have done that, there would have been negative consequences, and we allege that. And the district court, again, ignored that and indulged the inferences in favor of the defendant. So at the totality, and I know I've gone past my three-minute reserve, but I'm going to keep talking now because I think it's important. When you look at the totality of the circumstances, what would a reasonable consumer do? He first looks at Exhibit C because he's told to by the online advertisement. And it says very clearly, apply today, and then it says, see the program rules with a link, with one of the links, and the frequently asked questions and a link. But counsel, let me just ask, how can we say he's a reasonable consumer when he says, I don't read any of this stuff? Well, but that's not true, Your Honor. He read four pages of program rules. He read all the pages of the frequently asked questions. The program rules, and this is important too, the last paragraph of the four pages is entitled Privacy Policy, and it says, and there's a paragraph that talks about the importance of the Best Buy Privacy Policy, and it says to learn more, apply and go to the website. So when he sees that box that says the MasterCard Privacy Policy, he's already been told about it in the program rules, and he thinks what he's reading is the same thing, and he's not concerned about the Privacy Policy. And what's also important is the title of the program rules say Best Buy Reward Zone Program MasterCard Terms and Conditions, which he read all four pages. The online disclosure just above that box says, the important terms of your Best Buy Credit Card Account and Disclosure Statement. So both the program rules refer to the terms and conditions. Right above the box says Terms and Conditions. So when a reasonable consumer who has already read four pages and does not see an annual fee, wouldn't it be reasonable for that consumer when he sees the same title above the box, and then the box says Privacy Policy, wouldn't it be reasonable for a consumer to say, I've already read four pages, there's no mention whatsoever of a charge for the credit card. The frequently asked questions don't mention any fee for the credit card. So I'm pretty sure that I'm reading the same thing over and over again in this box. There's no credit card. And isn't that, and even if I'm wrong, isn't that really a fact for the jury? Can we really say that given what Best Buy told him to read, the program rules, the frequently asked questions, that no reasonable consumer would have acted the way my client did? I think to ask that question answers it. I see I'm out of time. Thank you very much for my opportunity to address this Court. Thank you, Counsel. We'll hear from Mr. Richter. Good morning. Stuart Richter on behalf of the defendants and the appellees in the case. I'd like to point out a few things to start out my presentation of my counsel raised in response to a question. First of all, the burden to put the materials before the Court. If this were a situation where it was a summary judgment and we were attempting to convert this motion into a summary judgment, I would agree that we'd want to submit a declaration establishing authenticity. On a motion to dismiss, we're simply putting documents in front of the Court that are referenced in the complaint asking the Court to take judicial notice. I think then it's incumbent on the plaintiff to come back and say, that's not the document that's alleged in my complaint. It's not sufficient. And my questions were really meant, and I guess you've answered it, I don't think you needed to have judicial notice taken. You may have asked for a motion for judicial notice, but the judge, having sat where that judge was for most of my life, if you put something in my complaint, you just can't put a complaint together, mention documents, and then not have the documents there for me to look at, and then me let you sustain a motion to dismiss by just not having the documents. That's why we have the incorporation doctrine. I can look at everything that's there, and that's what I was getting at, so I don't know that you have to go a lot further there. I think you've said what you need to say. I would really like you to get to this other particular matter, and that is, so let's say we've got these documents in. Say they're there. The big question that he's really suggesting is you can't get the motion to dismiss on just reading these documents when determining reasonability. I think you can, Your Honor. Well, that's his argument, so I'm wanting you to respond. Understood, Your Honor. The counsel talked about the totality of the circumstances, and he also said that there's precedent. There's a lot of precedent in the Ninth Circuit, including the Freeman case, that you can look at on a motion to dismiss the reasonable person standard, and you can if the facts are in dispute. In this case, they're not, Your Honor, if those matters are considered by the court. They're not in dispute. All the information was there, and there's only one conclusion. So what you're really suggesting is, in this particular matter, you're giving every benefit of the doubt to the non-moving party on this motion to dismiss. All the documents are in front of us, and now this is a question of But let me just ask, isn't the question whether a reasonable person would notice the annual fee really a factual issue? Well, I think it is, Your Honor, except that the annual fee was disclosed, and it was disclosed in a manner, and counsel raised this, and if I may, in responding to your question, briefly address it. Yes, if you look at this online page that the plaintiff alleges he eventually went to. Counsel, what's the page in the ER? Page 32, Your Honor. Thank you. Yes, Your Honor. If you look at that page, counsel said that you're required to look at the program rules and you're required to look at the frequently asked questions. That's not quite true. There's the option of doing that. The way it's set up, Your Honor, and this is the way the board and the OCC requires is, in order to apply and get past the application process, you have to go to those disclosures that give you the information in the Schumer box that's required under TILA. So in responding to your question, Your Honor, the plaintiff had to go. In order to click yes on that click wrap box, the plaintiff had to go to that box to get to the application. Now, whether the plaintiff in fact read what was in that box is another issue, but that's really the plaintiff's issue. The information was there and it was in a place where he had to have sent that he read it. I'd like to go to another question. When I asked, wasn't it really disclosed? And then he had 90 days to get it back. His response was that would affect his credit. What is your response to that? I have two points to raise for that, Your Honor. First of all, I think counsel misspoke. Nowhere is that alleged in the complaint. It's an argument that came up in front of this court for the first time. So that's not alleged in the complaint. There's absolutely no evidence to support that conclusion. And the fact of the matter is that under the standard, the deceptive standard articulated by the OCC, it's can a consumer avoid the injury. In this case, there's no dispute the consumer could have avoided the injury. Whether that's do I suffer some ding to my credit report or do I continue to pay $59 a year, which this appellant has done, it's undisputed that it was disclosed that you could cancel and get the fee refunded. It's right in the documents and it's undisputed that he didn't do that. Counsel, I'm looking at page 44 and I just want to be sure I'm understanding it correctly. Is that the page where the access to the disclosure statement occurs? Yes, Your Honor. Terms and conditions? Yes, Your Honor. There's a kind of a blank or an element. There's a line where presumably the statement begins or you click on it. Do I have that understanding correctly? It's difficult to read in this copy of the document, Your Honor. This is the attachment that was to the plaintiff's complaint. Yes. At the top it says terms and conditions and underneath that it says important terms and conditions of your Best Buy credit card account and disclosure statement. On the right you can either print or save that. Right. Then below that is where the click wrap box begins. The first part of that click wrap box, and you can barely see on the right, there's this scrolling line where you can scroll down there. All right. That's where it begins. What about the box immediately below it? There's a box that says I agree to the terms and disclosure statement. Did he click that? Yes. He had to. You have to click that box to get to the application form and get approved. Okay. That's the click wrap. Let me ask you a question. We've got a false advertising and we've got a fraud claim. A UCL false advertising claim, it is generally that we prohibit any unfair, deceptive, untrue or misleading advertising. Correct? Yes, Your Honor. That is governed by the reasonable consumer test, right? Yes, Your Honor. Do I have any California case that would suggest that because one doesn't click on all the boxes or because one doesn't do all the things that one might ought to do to get to the bottom line of where the actual disclosure is, that it's automatic that this is not a question of fact, whether this is a reasonable consumer? I don't. We cited three cases, Your Honor, two state court cases and one district court from the Northern District of California. I read those. I don't think they quite get there. They don't quite say that it's not a reasonable consumer standard, but what those cases stand for, Your Honor, is that in click you're assent that, and one of them dealt with an arbitration clause, even if you come back later and say, hey, I didn't read it, it's there, you're deemed to have consented to it. And so the point here, Your Honor, to get where I think you're trying to go is, and what the district court held... Well, let me tell you where I'm trying to go. If I look at the fraud and concealment, it seems to me that he has a tough time proving his claim when he doesn't read. Correct. So I went backwards. I went back to UCL false advertising. I looked at the elements that he has to prove, and I guess I'm still having a bit of a problem understanding why he didn't at least give some element of proof as to each of those elements, and therefore it is a question of fact the jury should consider rather than the district court making a legal determination. I think on the false advertising claim, Your Honor, the question is whether the ad's misleading, and what Mr. Davis is attempting to argue here is the ad's misleading because it doesn't contain the information that he had to read by clicking on the click rack. That's exactly what he's arguing. Right. And so, Your Honor, in that case, the board, the Federal Reserve Board and the OCC are the ones that are charged with determining where you need to make those disclosures and balancing information overload with disclosures. And they've held... So you're arguing preemption? I am going to argue preemption, Your Honor, and I'll get to that. But it's not just preemption, Your Honor. Well, you really are arguing safe harbor, aren't you, under TILA? Yes. Also argue that. Well, I'm just trying to get you to the common law of California, no preemption. Supposing I don't agree with preemption. Supposing I don't think it's preempted. How am I going to get outside of the jury considering at least a reasonable consumer what that is? Let me see if I can summarize it without referencing safe harbor or preemption because I sort of gravitate to those. They're all interrelated in my mind, Your Honor. But I would say that you get there because the advertisement on its face isn't misleading. The district court correctly, I believe, held that. No reasonable consumer could look at that ad and think that all the terms, including an account fee and what I would suggest is the most important term, your APR, how the monthly account is calculated to calculate your APR, none of those things are in the ad. You've got to go further to find those. So on that basis, the ad itself isn't deceptive. You have to go to the other disclosures. That's the way TILA and the OCC regulations are set up. Is there any good California case on that? If you want, Your Honor, that holds exactly that? No, Your Honor. Well, I didn't think so. Okay. No. Again, there are California cases that we cited that talk about the CLCRAP agreements and you're deemed to have sent even if you haven't read them. Did the district court get into preemption at all? I didn't think it did. Yes, the district court, but I think the district court dealt with field preemption and said there wasn't field preemption here. And I think the district court ended up being right because this court came out with your Aguayo decision after we Field preemption is only half the story. I think what we have here is express preemption because the OCC regulations expressly state that state law can't interfere with a national bank's right to make disclosures. Okay, but the district court did not hold that explicitly, did it? Or implicitly maybe it held? It rejected preemption, Your Honor. We had argued express and field preemption and it rejected preemption, although I don't believe it specifically dealt with express preemption. All right. As we go to the UCL's unfairness prong, we're talking about deceptive and unfair, aren't we? Correct. It seems to me that it's Haskell versus Time is pretty good on deception. What am I going to do about unfairness? Again, I'm trying to decide if this is really a motion to dismiss issue rather than a jury issue. What case do I use which can pretty much get me there on what happened here on unfairness? Well, Your Honor, to be honest, I don't think there's a case that's exactly on point that addresses unfairness, but I think there's a number of cases, including your Freeman case from this district court, that talk about under the UCL, if the disclosures are there and there's no two ways to look at it, all the disclosures are there, then it's appropriate for this court to dismiss a claim under the UCL. Now, that case didn't expressly deal with the unfair prong, but the unfair prong, whether you use the balancing test or the tethering test, still depends on some kind of conduct, and the plaintiff here could have prevented or wasn't reasonably deceived by that conduct because all the disclosures are there. Well, my worry is that these are good arguments, but we're really saying that in an unfairness situation and interpreting unfairness, you're asking the Ninth Circuit Court to say that UCLA, UCL, I say UCLA every time, UCLA, UCLA, UCLA claim is going to be a matter of law on these facts, I can get to that because there's no disputed facts, but we're going to say as a matter of law, this isn't unfair, without even having California really tell us it's not unfair. Well, Your Honor, respectfully, California's never going to tell us it's unfair because even if you decide that the district court for some reason stepped over the line, it's going to go back to the district court, so the district court's going to decide what's unfair, and under either standard, you can't say something's unfair when all the material is disclosed. I think under Freeman and even the Byers case, which is a California state court case, you're entitled to dismiss a complaint where, in the situation here, all of the facts are before the court. There's no dispute as to those facts. But counsel, all the facts were disclosed, but isn't the manner of the disclosure important here? When you're talking about the reasonable consumer, and where you have pages and pages and pages of disclosure, but the reasonable consumer would not be expected to read all of them. You're saying the reasonable consumer is expected to read every single page. No, I'm not saying that at all, Your Honor. The reasonable consumer is expected to read the page where they have to check the box saying, I read this page. And that's where the Schumer disclosures are. So these frequently asked questions, the other terms and conditions, and there's a number of other links on this page, which is page 44 of the record. No, the reasonable consumer shouldn't be expected to read all that, but they should be expected to read what they said they read. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And then the time has come to clear the courtroom. We have a sealed case coming up. Good job, by the way, both of you. Thank you.
judges: Nelson, O'scannlain, Smith